*Washington Square Legal Services, Inc.*
*Laura Sager, Esq.*
*245 Sullivan Street, 5th Floor*
*New York NY 10012*
*212-998-6442*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------

GWENDOLYN SCOTT-ADAMS

    Plaintiff

 against

URBAN BRANDS, INC.

    Defendant

------------------------------------

ECF CASE
07 Civ. 746 (DCF)

**AMENDED COMPLAINT**

**Jury Trial Demanded**

Plaintiff Gwendolyn Scott-Adams, by her attorneys, Washington Square Legal Services, Inc., alleges as follows:

### Nature of the Action

1. This is an action arising out of plaintiff's employment by defendant Urban Brands, Inc. ("Urban Brands") for defendant's (1) failure to pay plaintiff premium overtime wages in violation of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 et seq., and N.Y. Labor Law, Article 6, § 190 et seq., and Article 19, § 650 et seq., and NYCRR § 142-2.2; (2) intentional discrimination in violation of the Civil Rights Act of 1866, 42 U.S.C. § 1981, by firing plaintiff because of her race and national origin (African American and not of West Indian origin), and; (3) discrimination on the basis of disability in violation of the New York State Human Rights Law, N.Y. Executive Law §§ 296 (a) and (e) and the New York City Human

Rights Law, NYC Admin. Code §§ 8-107(1)(a) and (7), by refusing to grant plaintiff's request for reasonable accommodation for her physical disabilities and firing her because of her requests for reasonable accommodation.

## Jurisdiction

2. This Court has jurisdiction over plaintiff's FLSA unpaid premium overtime-wage claim pursuant to 28 U.S.C. § 1331 and 29 U.S.C. § 216(b), and has supplemental jurisdiction over plaintiff's New York Labor Law unpaid overtime-wage claim pursuant to 28 U.S.C. § 1367(a).

3. The Court has jurisdiction over plaintiff's § 1981 intentional race discrimination claim pursuant to 28 U.S.C. §§ 1331 and 1343.

4. The Court has jurisdiction over plaintiff's New York State and New York City Human Rights law claims concerning (a) defendant's denial of her request for reasonable accommodation of her disabilities and (b) retaliation for making such requests pursuant to 28 U.S.C. § 1332, in that the parties are citizens of different states and the amount in controversy in this action is greater than $75,000.

5. The Court also has supplemental jurisdiction over plaintiff's claims under the New York State and New York City Human Rights laws concerning defendant's (a) denial of her request for reasonable accommodation and (b) retaliation for making such requests pursuant to 28 U.S.C. § 1367(a) in that both her federal claims, *i.e.*, her claim under the FLSA and her claim under 42 U.S.C. § 1981, involve a common nucleus of operative facts with her State and City law claims. Specifically, both plaintiff's FLSA claim and her New York State and City law claims turn, in significant part, on the nature of plaintiff's job duties, and both her § 1981 claim

and her State and City law claims turn, in significant part, on factual questions concerning the defendant's asserted reason for firing her.

6. Plaintiff consents in writing to be a party to this FLSA action pursuant to 29 U.S.C. § 216(b). Her written consent is attached hereto and incorporated by reference.

## Parties

7. Plaintiff Scott-Adams resides in the Bronx, New York.

8. Defendant Urban Brands was incorporated in the State of Delaware. Its corporate headquarters and principal place of business is in Secaucus, New Jersey. Defendant operates the specialty retail women's clothing stores known as Ashley Stewart, as well as the Marianne chain of women's plus-sized clothiers. On information and belief, defendant operates more than 220 Ashley Stewart storefronts in some 25 states, the District of Columbia, and the US Virgin Islands, while Marianne has about 55 stores in the United States, Puerto Rico, and the Virgin Islands.

## Facts Concerning Plaintiff's FLSA and New York Labor Law Claims

9. Scott-Adams was employed by Urban Brands from July 14, 2004 through September 16, 2006. Her job title throughout her employment was co-store manager. She was employed for approximately one month in the Ashley Stewart store in Brooklyn, NY. Thereafter, she worked in the Ashley Stewart store on Fordham Road in the Bronx.

10. The Bronx store was under the supervision of a district manager, whose primary office was in the company's headquarters in Secaucus NJ. Employees at the Bronx store, in addition to Scott-Adams, consisted of a store manager, another co-store manager in addition to Scott-Adams, and a varying number of sales and maintenance associates. During part of the time

3

Scott-Adams was employed, the store had an Assistant Store Manager but no additional co-store manager.

11. Scott-Adams did not have a primary duty of management. She was not involved in the formal training of sales associates, which was done by the store managers, Ellie Fernandez and, later, Diane Jacobs. She had no input in setting the pay or the schedule of sales associates. Her authority to discipline sales associates was minimal; all serious infractions were handled by the store manager. She had no involvement in the making of sales or purchasing decisions.

12. As co-store manager, Scott-Adams would work the cash register, manage the fitting room, and serve customers on the floor, duties she shared with the sales associates. Her other duties involved responding to directives from corporate headquarters and her district manager about sales and promotions, setting up floor displays, handling complaints when the store manager was not there, receiving shipments, and, when she was closing the store at night, closing out the registers by tallying, securing, and recording receipts. She had no authority to hire or fire sales associates, nor was she involved in conducting performance reviews with the associates.

13. Throughout her employment, Scott-Adams regularly worked more than 40 hours per week. She was regularly required to work 45 hours per week, and one week each month she was required to work a minimum of 60 hours (during 12-hour shifts) to set up the floor with new merchandise.

14. In addition, Urban Brands required Scott-Adams to work 60 to 63 hours per week during its major sales periods—the Christmas time period, the Easter time period, the Mother's Day period, the back-to-school time period, and during periods when the store manager was on an extended leave of absence in the autumn of 2005.

15. When she was hired in July 2004, Urban Brands told her that she would be paid $17.31 per hour. From July 2005 until approximately February 2005, Urban Brands printed this hourly rate on her paycheck and printed her bi-weekly hours as "80," although she actually worked more than 40 hours per week. Her bi-weekly paycheck was equal to $17.31 times 80 hours or $1,384.80.

16. In February 2005, Urban Brands raised Scott-Adams' hourly wage to $17.83. From about March 1, 2005 through September 2005, Urban Brands printed this hourly rate on her paycheck stubs and continued to print her bi-weekly hours as 80, although she worked more than 40 hours each week. Her bi-weekly paycheck was equal to $17.83 times 80 hours or $1,426.40.

17. Beginning on or about October 1, 2005, Urban Brands ceased to print an hourly wage rate on the pay stubs. However, she continued to be paid as if she had worked only 80 hours during the two week period based on her then-current hourly wage.

18. Urban Brands required Ms. Scott-Adams to punch in and out on a computer system attached to the register and also to keep track of her hours in a record book. However, defendant required her to change the record of hours she actually worked to 40 hours each week in submitting time records to the company.

19. Throughout her employment, plaintiff's job duties did not meet the standards set forth in the Fair Labor Standards Act, 29 U.S.C. § 213(a), and the regulations of the Department of Labor, 29 C.F.R. 541.100(a), nor, in consequence, under the New York Labor Law § 650 et seq., 12 NYCRR § 142-2.2, for an exempt employee, that is, an employee exempt from the premium overtime requirements of the Act. Specifically, contrary to the requirements of those provisions, (a) plaintiff's primary duty was not the management of the enterprise or a department thereof; (b) on information and belief, she did not customarily and regularly direct the work of

two or more other employees within the meaning of 29 C.F.R. 541.104, and; (c) she did not have the authority to hire or fire other employees, nor were her suggestions and recommendations as to the hiring, firing, advancement, promotion or any other change of status of other employees given particular weight.

20. Defendant willfully failed to pay plaintiff premium overtime wages for hours worked in excess of 40 hours per week as required by 29 U.S.C. § 207 and N.Y. Labor Law § 652.

**Facts Concerning Plaintiff's Claim of Race-Based Firing in Violation of 42 U.S.C. § 1981**

21. Plaintiff is African American. She is not of West Indian national origin.

22. Defendant fired plaintiff on September 16, 2006. At that time, both Scott-Adams's immediate supervisor, Diane Jacobs, the store manager, and Jacobs' supervisor, Eric Berridge, the district manager, were of West Indian national origin. During her employment, Scott-Adams had heard both managers several time express a preference for employing persons of West Indian origin.

23. The defendant has asserted that Scott-Adams was fired because she violated corporate policy when she participated in apprehending a shoplifter who had left the store with merchandise.

24. Notwithstanding any written corporate policy with respect to shoplifters, Scott-Adams' managers had told her and other employees in the Bronx store that shoplifting was a serious problem at the store and that they should, in effect, do whatever was necessary to prevent such "inventory loss."

25. At the time Scott-Adams was fired, the other co-store manager employed in the Bronx store was a person of West Indian origin, Keisha Thomas. Ms. Thomas also participated

in apprehending the shoplifter. However, she was not terminated nor, on information and belief, was she disciplined in any way for this incident.

26. Moreover, on information and belief, during the previous month, Ms. Thomas had violated company policy in connection with an incident involving apprehending a shoplifter in the Ashley Stewart store in Pelham, NY but, on information and belief, was not disciplined for that infraction.

27. On information and belief, Urban Brands intentionally treated Scott-Adams differently from Thomas because of her race and national origin. Specifically, defendant terminated Scott-Adams because she is African American and not of West Indian origin.

28. Plaintiff has suffered anguish, humiliation and emotional distress as a result of defendant's firing her because of her race and national origin.

## Facts Concerning Plaintiff's Claim of Denial of Reasonable Accommodation for her Disabilities

29. Approximately one year after beginning to work for Urban Brands, Scott-Adams experienced increased pain from a herniated disk in her neck. As a result, she asked her supervisor, the store manager, for permission not to lift heavy objects, such as mannequins and shipment boxes. The supervisor denied the request and told Scott-Adams that she could not ask anyone to lift heavy items for her.

30. This request by Scott-Adams for accommodation was reasonable because other store employees were available to lift heavy objects and were already tasked with lifting certain heavy objects, such as the manual gate.

31. In the winter of 2005, Scott-Adams began having sharp pain in her hip, which was eventually attributed to a ruptured ovarian cyst. When the pain began, Scott-Adams asked her supervisor, the store manager, for permission to work shorter hours and to sit down as needed

7

when sitting would not interfere with her job duties, as for example, at the cash register. She made the requests several times, and each time, the store manager denied her requests.

32. Scott-Adams was eventually hospitalized overnight because of a ruptured ovarian cyst, and she was out of work for approximately one week. Her doctor advised her that for a period of time, while she was recuperating, she should not work at night and should not lift heavy objects. When she returned to work, she renewed her requests for permission to work fewer hours at night and to sit down as needed. She made these requests of her supervisors, the store manager and district manager, and again, her requests were denied without any discussion of their feasibility.

33. These requests by Scott-Adams for accommodation were reasonable because managers from other stores could have been brought in to cover her hours, other employees were available to lift heavy objects, and being allowed to sit down briefly when she experienced pain would not have interfered with many of her job duties, such as working the cash register or doing paperwork.

34. On January 28, 2006, while at work, Scott-Adams suffered two "mini-strokes," which caused the left side of her body to become numb and her left hand to be temporarily paralyzed. She was taken by ambulance to a hospital and then released after recovering sensation on her left side.

35. During the following days, Scott-Adams did not go to work. She saw her primary care physician and a neurologist, who diagnosed her as having had transient ischemic attacks (TIAs). She remained at home for the next several weeks, during which time she experienced several additional TIAs.

36. Before returning to work, upon the advice of her doctor, Scott-Adams requested of her supervisor, the store manager, and the corporate human resources department, permission to work shorter hours and to sit down as needed, when sitting down would not interfere with her job duties. Her requests were denied. After returning to work, Scott-Adams requested the same accommodations, as well as the accommodation of working fewer days per week, from her supervisor, the store manager. On each occasion, the store manager denied the requests.

37. Plaintiff's requests for accommodation following her TIAs were reasonable for the reasons discussed above.

38. As a result of defendant's denial of her requests for reasonable accommodation, plaintiff suffered physical injury as well as anguish, humiliation and emotional distress.

### Facts Concerning Plaintiff's Claim of Retaliation under New York State and New York City Human Rights Law

39. Plaintiff repeats and re-alleges the allegations of paragraphs 22 through 26. These paragraphs allege that defendant fired her on September 16, 2006; that defendant has asserted that she was fired for violation of company policy concerning apprehending shoplifters; and that the co-store manager, Keisha Thomas, was not fired or otherwise disciplined for participation in apprehending the shoplifter.

40. Prior to her termination, plaintiff's manager had expressed concern at her absences from work because of medical conditions and her requests for accommodation of those conditions.

41. On information and belief, Keisha Thomas had never requested accommodation for any disability.

42. On information and belief, defendant's asserted reason for terminating Scott-Adams—her violation of the policy concerning shoplifters—was not the true reason for her

9

termination. Rather, defendant fired Scott-Adams because of her requests for accommodation of her disabilities.

43. Plaintiff has suffered anguish, humiliation and emotional distress as a result of defendant's firing her for requesting reasonable accommodation of her disabilities.

### First Claim for Relief
(Federal overtime wage claim, 29 U.S.C. § 201 et seq.)

44. Based on the allegations in paragraphs 9 through 20 above, defendant violated plaintiff's right to premium overtime pay of one-and-a-half times her regular hourly rate for work in excess of 40 hours per week as required by the FLSA, 29 U.S.C. § 207 et seq., and such violation was willful.

45. Accordingly, plaintiff is entitled to recover from defendant an amount to be proven at trial, together with liquidated damages of 100 percent for a willful violation, as well as attorneys' fees and costs, pursuant to 29 U.S.C. § 216.

### Second Claim for Relief
(New York State overtime wage claim, NY Labor Law § 650 et seq. and NYCRR § 142-2.2)

46. Based on the allegations in paragraphs 9 through 20 above, defendant violated plaintiff's right to premium overtime pay of one and a half times her regular hourly rate for work in excess of 40 hours per week in violation of New York Labor Law § 650 et seq. and NYCRR § 142-2.2, and such violation was willful.

47. Accordingly, plaintiff is entitled to recover from defendant an amount to be proven at trial for her unpaid premium overtime wages, an additional 25 per cent as liquidated damages, and reasonable attorneys' fees, and costs of the action, pursuant to N.Y. Lab. Law §§ 198 and 663.

### Third Claim for Relief
(Intentional discrimination on the basis of race, 42 U.S.C. § 1981)

48. Based on the allegations in paragraphs 21 through 28 above, defendant intentionally discriminated against plaintiff on the basis of her race and national origin, specifically, being African American and not of West Indian origin, by firing her in violation of 42 U.S.C. § 1981.

49. Accordingly, plaintiff is entitled to compensatory damages for emotional distress and punitive damages, and attorneys' fees and costs pursuant to 42 U.S.C. § 1988.

### Fourth Claim for Relief
(Denial of Reasonable Accommodation in violation of NY State Human Rights Law, Exec. Law §296(a))

50. Based on the allegations in paragraphs 29 through 38 above, defendant denied plaintiff's reasonable accommodation of her physical disabilities in violation of the New York State Human Rights Law, N.Y. Exec. Law § 296(a).

51. Accordingly, plaintiff is entitled to compensatory damages for emotional distress pursuant to N.Y. Exec. Law § 297(9).

### Fifth Claim for Relief
(Denial of Reasonable Accommodation in Violation of NYC Human Rights Law, NYC Admin. Code § 8-502 (a))

52. Based on the allegations in paragraphs 29 through 38 above, defendant denied plaintiff's reasonable accommodation of her physical disabilities in violation of the New York City Human Rights Law, NYC Admin. Code § 8-107(1)(a).

53. Accordingly, plaintiff is entitled to compensatory damages for emotional distress, punitive damages, and attorneys' fees and costs pursuant to NYC Admin. Code § 8-502 (a).

### Sixth Claim for Relief
(Retaliation for Requesting Reasonable Accommodation in violation of NY Human Rights Law)

54. Based on the allegations in paragraphs 39 through 43 above, defendant subjected plaintiff to an adverse employment action because of her request for reasonable accommodation of her physical disabilities in violation of the New York City Human Rights Law, N.Y. Exec. Law § 296(e).

55. Accordingly, plaintiff is entitled to compensatory damages for emotional distress pursuant to NY Exec. Law § 297(9).

### Seventh Claim for Relief
(Retaliation for Requesting Reasonable Accommodation in Violation of NYC Human Rights Law)

56. Based on the allegations in paragraphs 39 through 43 above, defendant subjected plaintiff to an adverse employment action because of her request for reasonable accommodation of her physical disabilities in violation of the New York City Human Rights Law, NYC Admin. Code § 8-107(7).

57. Accordingly, plaintiff is entitled to compensatory damages for emotional distress, punitive damages, and attorneys' fees and costs pursuant to NYC Admin. Code § 8-502(a).

**WHEREFORE**, plaintiff respectfully requests that this Court grant the following relief:

58. Award plaintiff premium overtime compensation due under the FLSA and additional equal amount as liquidated damages because of defendants' willful failure to pay premium overtime wages, and attorneys' fees and costs pursuant to 29 U.S.C. § 216;

59. Award plaintiff premium overtime compensation due to her under New York Labor Law § 650 and NYCRR § 142-2.2, and an additional twenty-five percent as liquidated damages, and its implementing regulations, together with attorneys' fees and costs pursuant to NY Lab. Law §§ 198 and 663;

60. Award plaintiff compensatory damages for emotional distress as well as punitive

damages for intentional discrimination on the basis of race and national origin, in violation of 42 U.S.C. § 1981, together with attorneys' fees and costs pursuant to 42 U.S.C. § 1988;

61. Award plaintiff compensatory damages and costs for denial of her requests for reasonable accommodation of her disabilities, and for retaliation for having requested such accommodation, in violation of the New York State Human Rights Law, pursuant to N.Y. Exec. Law § 297(9);

62. Award Plaintiff compensatory and punitive damages, costs, and attorneys' fees for denial of plaintiff's request for reasonable accommodation of her disabilities and for retaliation for having requested such accommodation, in violation of the New York City Human Rights Law, pursuant to N.Y.C. Admin. Code § 8-502;

63. Award plaintiff pre-judgment interest for amounts awarded pursuant to federal and state law; and

64. Award plaintiff such other relief as this Court deems necessary and proper.

Dated:   New York, New York
         October 15, 2009

                                          Respectfully Submitted,

                                          Washington Square Legal Services, Inc.

                                          By:   *Laura Sager*
                                                   Laura Sager

                                          245 Sullivan Street, Fifth Floor
                                          New York, NY 10012
                                          (212) 998-6442
                                          Attorney for plaintiff

## AUTHORIZATION PURSUANT TO 29 U.S.C. §216(b)

I, GWENDOLYN SCOTT-ADAMS, hereby consent to be a plaintiff in this lawsuit pursuant to §216(b) of the Fair Labor Standards Act.

Date: October 13, 2009

_____
GWENDOLYN SCOTT-ADAMS